[Civ. No. 15148. Second Dist., Div. Three. May 28, 1946.]

I. H. KOBLIK, Respondent, v. LOS ANGELES CITY JUNIOR COLLEGE DISTRICT OF LOS ANGELES COUNTY et al., Appellants.

Harold W. Kennedy, County Counsel, and Wm. E. Lamoreaux, Deputy County Counsel, for Appellants.

Ray C. Eberhard, Elisabeth Eberhard Zeigler, Tanner, Odell & Taft and Robert A. Odell for Respondent.

WOOD, J.—Petition for writ of mandate requiring defendants to classify petitioner as a permanent teacher of the Los Angeles Junior College District, and to pay him the difference between the salary of a permanent teacher and the salary of a substitute teacher.

Petitioner had been classified, and had taught, as a permanent teacher in said district for more than 10 years con-

tinuously preceding the close of the school year 1943-44. On May 8, 1944, he and 96 other teachers (23 probationary and 74 permanent) were dismissed by defendants on account of an alleged decrease in enrollment. In taking such action the defendants acted, as to the permanent teachers, under the provisions of section 13651 of the Education Code, which provided in part: ''Whenever it becomes necessary to decrease the number of permanent employees in a school district on account of . . . a decrease in the number of pupils attending the school of the district . . . the governing board may dismiss so many of the employees as may be necessary at the close of the school year. In making dismissals employees shall be dismissed in the inverse of the order in which they were employed. . . .''

Prior to the opening of the school year 1943-44 the United States Army entered into a contract with the defendant board of education for an army specialized training program whereby a large number of enlisted men were admitted as students at said junior college. Prior to said May 8th, when the teachers were dismissed, the army cancelled said contract, thereby causing a decrease in enrollment. After March, 1944, that is during the remaining three months of the school term, none of the students enrolled in the army program remained in the school.

Thirty-two of the total of 97 teachers, who were dismissed, were assigned to teach full time in the army program, and two were assigned to teach one-half time therein and one-half in the ordinary program of the school. Thirteen of those assigned to the army program were probationary teachers, and the others were permanent teachers.

The petitioner herein was not assigned to the army program, but during the whole period of his service at that school, which commenced September 19, 1932, he was a teacher of art in the regular program of the school. At the end of the 1943-44 term only one teacher of art was retained for the 1944-45 term, and that one (not the petitioner) had the highest seniority of the art teachers. Petitioner was classified as a teacher of art at his request, being the only department to which he had requested assignment.

On August 28, 1944, the board of education promulgated a reemployment list of dismissed junior college teachers, listing said teachers in their various educational fields according to their seniority ratings, the petitioner being listed as third

in order of seniority in the art department. On said day a large number of the teachers on said reemployment list were reemployed, and some of them were classified as permanent teachers, and others including the petitioner were classified as substitutes. All teachers classified upon such reemployment as permanent had a higher seniority than petitioner. Those classified as permanent were reappointed in the order of their original employment. At that time, and under that method of employment, the available permanent positions were filled before the petitioner's name, on the reemployment list, was reached. Also at that time 25 permanent teachers, who had not been dismissed and who had higher seniority than those who had been dismissed, were on leave of absence. In addition thereto seven dismissed permanent teachers of higher seniority than petitioner were in the armed services. In making the teaching assignments for the 1944-45 term, the permanent teachers on leave of absence were assigned to certain vacant positions, and substitute teachers were employed to serve in their places. Also at that time, dismissed teachers who were then in the armed services and had such seniority that their names were high enough on the reemployment list to be included in the number of permanent positions to be filled, were reemployed and assigned to certain vacant positions, and substitutes were employed to serve in their places.

In accordance with such plan of making assignments, a permanent teacher who was on leave of absence, or a dismissed teacher who was in the armed forces and reemployed as a permanent teacher, was assigned to the position in the art department formerly held by petitioner, and petitioner was employed, at the beginning of the term on September 4, 1944, as a substitute for the permanent teacher so assigned. The monthly salary of a permanent teacher of the rank of petitioner was $385, and the salary of a substitute in such position was $298.

On January 29, 1945, it became necessary to reemploy ten permanent teachers. At that time petitioner's name was high enough on the reemployment list to be included in the number of permanent positions to be filled, and on that date he was reemployed as a permanent teacher, and ever since that date has been serving in the art department as such permanent teacher.

The complaint herein was filed on February 15, 1945, after petitioner had been reemployed as a permanent teacher,

but the fact that he had been so reemployed does not appear therein. The question, presented by the complaint, as to whether a writ of mandate should issue directing defendants to classify petitioner as a permanent teacher is moot, except as to whether the defendants should classify him on their records as a permanent teacher for the period from September 4, 1944, to January 29, 1945.

Petitioner contends that his dismissal as a permanent teacher was by reason of the effect of the recent wars upon the enrollment, and therefore under the provisions of section 13654 of the Education Code he was entitled when "reappointed" to be classified as a permanent teacher and to be treated as having been on a leave of absence, with no break in the continuity of his service. That section provides in part: "Notwithstanding the provisions of Section 13651 [the section under which defendants dismissed petitioner], permanent employees dismissed because of the effect of the wars in which the United States is presently engaged upon enrollment or upon the maintenance of a particular kind of services shall have the preferred right to reappointment, in the order of their original employment . . . if the number of employees be increased, or such service is reestablished within two years after cessation of hostilities in such wars. As to any employee who is so reemployed the period of his absence shall be treated as a leave of absence and shall not be considered as a break in the continuity of his service. . . ." He states that at the beginning of the 1944-45 term, when he was selected on the asserted theory that he was a substitute, he was reappointed in fact as a permanent teacher within the meaning of the word "reappointment" as used in that section. He argues that having been appointed theretofore as a permanent teacher, a reappointment could be an appointment only to the same kind of position as that which he had held theretofore, namely, a permanent position; that when he was reappointed he had "a vested right to be classified as permanent"; that even though such a construction might place the board of education in the position of having to employ two permanent teachers when only one was necessary, that is, in the event a permanent teacher should return from war after another permanent teacher had been appointed, such a situation would have no bearing on the case, since it is no part of the court's responsibility to make the law, but only to enforce the law as

it is written. His argument, therefore, is in effect that by virtue of that section a permanent teacher, who has been dismissed by reason of a decrease in enrollment caused by the recent wars, can be reemployed only as a permanent teacher and in no other capacity. According to petitioner's contention if the board of education, in an attempt to furnish temporary employment to a permanent teacher who had been dismissed on account of decreased enrollment, should notify him that it would employ him as a substitute while he was awaiting his turn for reappointment as a permanent teacher, and if he should then enter upon the performance of the duties assigned to him, he would not be a substitute, as contemplated by the board of education, but would be in fact a permanent teacher, even though at that time there was no permanent position to be filled. In other words, according to his contention, the board of education, pending the creation of additional permanent positions to which it might assign a dismissed permanent teacher, could not employ effectually a substitute teacher from the list of dismissed permanent teachers, but in order to accomplish the employment of a substitute it would be necessary to employ a person other than a dismissed permanent teacher.

The contention of petitioner is not sustained. The employment of petitioner as a substitute teacher was not a reappointment within the meaning of the provisions of said section 13654. Reappointment within the meaning of that section is a reappointment to a regular position. The right granted by that section is preference in reappointment to a regular position in the order of original employment when a regular position is available.

The appellants were not required, under the statute then in effect, to offer to petitioner, as a dismissed permanent teacher, the opportunity for substitute service prior to offering it to one who had not held such a permanent position. They could have declined to offer him any employment until January 29, 1945, when his name was high enough on the reemployment list to be reappointed to a permanent position. Section 13652 of the Education Code, as amended in 1945, included a provision that, "During the period of his preferred right to reappointment any such employee [a dismissed permanent teacher] shall, in the order of original employment, be offered prior opportunity for substitute service during the absence of any other employee who has been

granted a leave of absence or who is temporarily absent from duty; provided . . . that the compensation he receives shall not be less than that which he was receiving at the time his services were terminated. . . .'' Even though such amendment was not in effect when appellants employed petitioner in 1944 as a substitute, the appellants voluntarily followed such procedure as therein directed, except as to compensation, and petitioner was the beneficiary of that gratuitous act on their part. ■ Said amendment of section 13652 indicates that the word ''reappointment,'' as used in section 13654 previously enacted, was not intended by the Legislature to mean that the reemployment of a dismissed permanent teacher as a substitute was in fact the reappointment of him as a permanent teacher.

■ Petitioner rests his case on appeal upon his contention above mentioned, but asserts, in addition thereto, that the facts controvert appellants' argument that the board of education did not abuse its discretion in dismissing petitioner on the ground of decreased enrollment. The average daily attendance of students in the army program during each of the ten months of said period was as follows: 601; 450; 1130; 1220; 643; 637; 153; 0; 0; 0. The number of teachers assigned to said program in each of those respective months was as follows: 41; 61; 62; 63; 62; 50; 50; 50; 27; 19. The average daily attendance of pupils in the school during each of the ten months of the 1943-44 term, excluding those in the army program, was as follows: 1,960; 1,894; 1,829; 1,555; 1,426; 2,174; 2,253; 2,203; 2,138; 1,897. The average daily attendance of pupils in the school during each of the first two months of the 1944-45 term was as follows: 2,448; 2,382. The principal decrease in enrollment was, as above indicated, in the army program where petitioner was not a teacher. It appears, however, that during each of the three last months of the year there was a decrease in enrollment in the regular program of the school, and that in the last month the enrollment therein had decreased 356 from the highest enrollment for the year. The decision of the board of education to dismiss teachers on account of decreased enrollment was required to be made before the close of the year, and at the time such decision was made the enrollment in the army program had been reduced to nothing, the enrollment in the regular program was decreasing, the war conditions were

getting worse, and great uncertainty prevailed as to the effect of the wars upon enrollment in the next year. It does appear that at the beginning of the next year the enrollment increased, but it also appears that many of the dismissed teachers were then reemployed as permanent teachers to meet the requirements of such increase. It should not be concluded from the record here that the board of education abused its discretion in dismissing petitioner on account of decreased enrollment.

The judgment is reversed.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied June 21, 1946, and respondent's petition for a hearing by the Supreme Court was denied July 24, 1946. Carter, J., voted for a hearing.